# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1965V

| | |
|---|---|
| MIKAEL LANGNER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 11, 2024 |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Benjamin Patrick Warder*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On December 23, 2020, Mikael Langner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of tetanus, diphtheria, and pertussis ("Tdap") vaccine that was administered on November 26, 2018. Petition at 1, ¶¶ 1-3. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Although Respondent conceded entitlement, the parties were unable to resolve damages on their own, so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$62,946.18**, **representing** $**60,000.00 for actual pain and suffering, plus** $**2,946.18 for past unreimbursable expenses.**

### I.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of*

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

2

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.     Prior SIRVA Compensation Within SPU[4]

### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2024, 3,696 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 3,588 of these cases, with the remaining 108 cases dismissed.

2,075 of the compensated SPU SIRVA cases were the result of a reasoned ruling that petitioner was entitled to compensation (as opposed to an informal settlement or concession).[5] In only 200 of these cases, however, was the amount of damages *also* determined by a special master in a reasoned decision.[6] As I have previously stated, the

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 1,513 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (1,846 cases) or stipulation (29 cases). Although all proposed amounts denote *some* form of

3

written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[7]

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *200* | *1,846* | *29* | *1,513* |
| **Lowest** | $40,757.91 | $10,000.00 | $45,000.00 | $2,500.00 |
| **1st Quartile** | $70,000.00 | $61,338.13 | $90,000.00 | $36,000.00 |
| **Median** | **$88,974.23** | **$81,049.85** | **$130,000.00** | **$53,500.00** |
| **3rd Quartile** | $125,007.45 | $110,000.00 | $162,500.00 | $80,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 200 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $85,000.00 as the median amount. Only nine of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9]

---

agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In eight cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

#### A.     The Parties' Arguments

The parties agree Petitioner should be awarded $2,946.18 for past unreimbursed expenses. Respondent's Response to Petitioner's Memorandum in Support of Damages ("Opp.") at 2. Thus, the only area of disagreement is the amount to be awarded for Petitioner's pain and suffering. Petitioner seeks $60,000.00. Petitioner's Memorandum in Support of Damages ("Brief") at 18. In contrast, Respondent argues for an award of only $40,000.00. Opp. at 2, 15.

In arguing for the greater sum, Petitioner emphasizes his severe pain levels, approximately one year of treatment - including three ultrasound guided anesthesia blocks, the difficulties performing his duties as a physician caused by the effect of his injury (to his dominant right arm), and the additional emotional distress from knowing his injury was preventable. Brief at 13-17. He favorably compares the facts and

5

circumstances in his case with nine other cases - *Rayborn, Couch, Knauss, Clendaniel, C.H., Griffore, Dagen, Johnson,* and *Bartholomew* – all involving pain and suffering awards ranging from $55,000.00 to $67,000.00.[10] Brief at 16-17.

To support his characterization of a milder SIRVA injury, Respondent stresses Petitioner's conservative treatment, only seven physical therapy ("PT") sessions, two MRIs, and three ultrasound guided anesthesia blocks - as opposed to steroid injections. Opp. at 8-9. After distinguishing four of the comparable cases proposed by Petitioner, he suggests four comparable cases - *Ramos, Mejias, Piccolotti,* and *Merwitz* - involving pain and suffering awards ranging from $40,000.00 to $50,000.00.[11]

### B. Analysis

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU

---

[10] *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for pain and suffering); *Couch v. Sec'y of Health & Hum. Servs.,* No. 20-1246V, 2022 WL 4453921 (Fed. Cl. Spec. Mstr. Oct. 24, 2022) (awarding $55,000.00 for pain and suffering); *Knauss v. Sec'y of Health & Hum. Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering); *Clendaniel v. Sec'y of Health & Hum. Servs.,* No. 20-0213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021) (awarding $60,000.00 for pain and suffering); *C.H. v. Sec'y of Health & Hum. Servs.,* No. 20-0249V, (Nov. 10, 2022), found on the United States Court of Federal Claims website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc (last visited June 10, 2024) (awarding $60,000.00 for pain and suffering); *Griffore v. Sec'y of Health & Hum. Servs.,* No. 19-1914V, 2022 WL 1584682 (Fed. Cl. Spec. Mstr. Apr. 5, 2022) (awarding $65,000.00 for pain and suffering); *Dagen v. Sec'y of Health & Hum. Servs.,* No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for pain and suffering) *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (awarding $65,000.00 for pain and suffering); *Bartholomew v. Sec'y of Health & Hum. Servs.,* No. 18-1570V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000.00 for pain and suffering).

[11] *Ramos v. Sec'y of Health & Hum. Servs.,* No. 18-1005V, 2021 WL 688576 (Fed. CL. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for pain and suffering); *Mejias v. Sec'y of Health & Hum. Servs.,* No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000.00 for pain and suffering); *Piccolotti v. Sec'y of Health & Hum. Servs.,* No. 20-0135V, 2023 WL 3165383 (Fed. Cl. Spec. Mstr. Mar. 31, 2023) (awarding $45,000.00 for pain and suffering); *Merwitz v. Sec'y of Health & Hum. Servs.,* No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Oct. 11, 2022) (awarding $50,000.00 for pain and suffering).

SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The medical records show Petitioner suffered a SIRVA that involved moderate to severe pain levels for approximately one year. He first sought treatment from his primary care provider on January 2, 2019, only 37 days post-vaccination. Exhibit 2 at 3-6. When seen by an orthopedist two days later, he rated his pain level as seven to eight out of ten, noting that it began the day after vaccination. *Id.* at 38. By late March 2019, he reported 25 percent improvement but pain at a level of six. *Id.* at 122.

Throughout the following four months, Petitioner's condition continued to improve, albeit slowly. By July 2019, Petitioner had resumed swimming, but could only perform the breaststroke or one-armed back stroke. Exhibit 4 at 18. Almost one-year post-vaccination, when seen by Dr. Bodor (a physician familiar with vaccine-related shoulder injuries), Petitioner reported pain ranging from three to seven. Exhibit 5 at 9. An ultrasound-guided anesthesia block reduced his pain levels to one to three. *Id.* at 10. Three such procedures, administered in October and November 2019, reduced his pain level to zero. *Id.* at 6.

The four cases cited by Respondent do not constitute useful comparisons, as they involved significantly lower pain levels. *See Ramos,* 2021 WL 688576, at *5; *Mejias,* 2021 WL 5895622, at *6-7; *Piccolotti,* 2023 WL 3165383, at *5; *Merwitz,* 2022 WL 17820768, at *5. In at least two of the cases cited by Respondent, as well as the two cases involving lower pain and suffering awards ($55,000.00) cited by Petitioner, the petitioners did not seek medical treatment until more than twelve weeks post-vaccination. *See Ramos,* 2021 WL 688576, at *5-6; *Merwitz,* 2022 WL 17820768, at *5-6; *Couch,* 2022 WL 4453921, at *3; *Rayborn,* 2020 WL 5522948, at *11-12. Given that Petitioner sought medical care approximately one-month post-vaccination, these cases are easily distinguishable.

Instead, I find that the facts and circumstances of Petitioner's case more closely resemble those in *Clendaniel* and *C.H.*, cases involving pain and suffering awards of $60,000.00. The petitioners in these cases sought treatment within 26 and 27 days of vaccination, reported severe and slowly decreasing pain levels, and suffered an injury lasting approximately one year. *Clendaniel,* 2021 WL 4258775, at *8-9; *C.H.,* at 8-9. Thus, Petitioner should receive the same amount of compensation for his pain and suffering.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $60,000.00 represents a fair and appropriate amount of**

**compensation for Petitioner's actual pain and suffering.**[12] **I also find that Petitioner is entitled to $2,946.18 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $62,946.18 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with the Decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.